**FILED**

APR 29 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 13-30086-GPM |
| ) | |
| ANTWAYNE B. CRUMBLE, ) | 18 U.S.C. § 371 |
| DANYELLE T. MCNEIL, ) | |
| ) | |
| Defendants. ) | |

## INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

### COUNT 1

**CONSPIRACY TO COMMIT FEDERAL STUDENT AID FRAUD,
MAIL FRAUD, AND WIRE FRAUD
18 U.S.C. § 371**

1. From on or about September 1, 2008, through on or about September 28, 2009, in St. Clair County, Illinois, within the Southern District of Illinois, and elsewhere,

**ANTWAYNE B. CRUMBLE, and
DANYELLE T. MCNEIL,**

defendants herein, did knowingly and intentionally conspire with each other and with other persons to commit offenses against the United States of America, namely Federal Student Aid Fraud, in violation of Title 20, United States Code, Section 1097, Mail Fraud, in violation of Title 18, United States Code, Section 1341, and Wire Fraud, in violation of Title 18, United States Code, 1343.

## Background

2. The University of Phoenix (hereinafter "UOP") is a for-profit institution of higher learning with an enrollment of more than 400,000 undergraduate and 78,000 graduate students. While the UOP has more than 200 campus locations in 40 states, it specializes in online academic programs for Associate's, Bachelor's, Master's, and Doctoral degrees that are offered through classes and coursework completed over the internet.

3. In order for a student to enroll at the UOP, that student must have earned either a high school diploma or a recognized equivalency credential such as the one earned by passing the General Education Development (GED) tests.

4. Once admitted to the UOP as an undergraduate student, an individual is eligible for student financial aid, such as Pell Grants and student loan funds. A student may use the financial aid awards to cover eligible educational expenses like tuition, fees, books, course-related supplies, and living expenses incurred while enrolled in school.

5. An undergraduate student at the UOP must complete ten days of coursework before student financial aid funds are disbursed to the UOP. When the UOP receives the funds, it first applies the funds towards any outstanding tuition and fees owed to the school. If the amount of financial aid proceeds applied for and awarded to a student exceeds the amount of tuition and fees owed to the UOP, then the student receives a refund disbursement in the amount of the difference between the total amount of aid awarded and the total amount of tuition and fees owed to the UOP.

6. Both the Pell Grant program and the Federal Family Education Loan (FFEL) program are provided and insured under Title IV of the Higher Education Act of 1965, as amended, Title 20, United States Code, Sections 1071-1087, and are administered by the United

States Department of Education. Pell Grants are awarded to undergraduate students based upon a number of criteria, which includes financial need. Pell Grants are unlike student loans because the grants do not have to be repaid.

## Purpose

7. The purpose of the conspiracy was for the defendants to enroll friends and family members in online courses at the UOP in order to obtain federal student financial aid funds by false and fraudulent pretenses, representations, and promises. **CRUMBLE** and **MCNEIL** used the personal identifying information of their friends and family members to create the illusion that the enrollees intended to become, and were eligible to become, bona fide students of the UOP who could receive federal student financial aid funds.

## Manner and Means

8. At all times relevant to this Information, Defendants **ANTWAYNE B. CRUMBLE** and **DANYELLE T. MCNEIL** were involved in a romantic relationship and were residents of East St. Louis, Illinois.

9. **CRUMBLE** and **MCNEIL** solicited personal identifying information, including dates of birth and social security numbers, from more than two dozen friends and family members (hereinafter "the participants").

10. **CRUMBLE** and **MCNEIL** used the personal identifying information they received to complete online applications for enrollment as undergraduate students at the UOP. After the participants were accepted by the UOP, **CRUMBLE** and **MCNEIL** enrolled the participants in online courses through the UOP's website.

3

11. After enrolling, the participants became eligible to receive federal student financial aid. **CRUMBLE** and **MCNEIL** used the personal identifying information of the newly enrolled participants to make applications for federal student financial aid, including Pell Grant funds and student loan funds.

12. After **CRUMBLE** and **MCNEIL** enrolled the participants in online courses and filled out the paperwork to receive federal student financial aid, **MCNEIL** completed the initial coursework for the participants for ten days. After ten days, participants' financial aid awards were disbursed to the UOP, and the UOP, in turn, issued refund checks to the participants by United States mail. After the participants received the refund checks, online coursework ceased, causing class enrollments to be terminated for inactivity.

13. The amount of each overpayment was refunded by check via United States mail to the student's address provided to the UOP on the application forms. The address provided often did not match a participant's actual home address. After the refund checks were received, **CRUMBLE** and **MCNEIL** split the student loan refund proceeds between themselves and the participants. These refund proceeds were then misused by **CRUMBLE**, **MCNEIL** and the participants, all of whom spent the money on personal expenditures rather than any legitimate educational expense.

14. In total, **CRUMBLE** and **MCNEIL** attempted to enroll 28 individuals at the UOP, none of whom intended to or actually became legitimate students. All 28 were ineligible to receive federal student financial aid because they did not have any legitimate educational expenses at the UOP to warrant such aid.

15. Sixteen of the 28 individuals solicited by **CRUMBLE** and **MCNEIL** ultimately enrolled at the UOP. They received a total of $98,658 in student financial aid, of which $42,280

was awarded in Pell Grants and the remaining $56,378 was awarded through the FFEL program. None of the sixteen individuals intended to become a legitimate UOP student, and nine of the sixteen who enrolled were not high school graduates and did not have a high school equivalency credential, making them ineligible to receive federal student financial aid.

16. The remaining twelve of twenty-eight individuals who attempted to enroll at the UOP failed to obtain federal student financial aid funds.

17. When the student loans became due for repayment, **CRUMBLE**, **MCNEIL** and the participants failed to repay the student loans according to the terms of the promissory notes, thereby causing numerous student loans to be in default status at the present time.

### Overt Acts

18. In furtherance of the conspiracy to commit offenses against the United States and to effect the objects thereof, one or more of the co-conspirators did various overt acts in the Southern District of Illinois and elsewhere, including, but not limited to:

   a. **CRUMBLE** and **MCNEIL** spoke to INDIVIDUAL #1, INDIVIDUAL #2, INDIVIDUAL #3, and INDIVIDUAL #4 and solicited the individuals to provide their personal identifying information so that **CRUMBLE** and **MCNEIL** could enroll the participants in the UOP and apply for financial aid funds on their behalf.

   b. **CRUMBLE** and **MCNEIL** completed online admissions and financial aid applications to enroll INDIVIDUAL #1, INDIVIDUAL #2, INDIVIDUAL #3, and INDIVIDUAL #4 at the UOP and falsely represented that each individual was a high school graduate, and therefore an eligible student, when,

in fact, none of the four individuals had graduated high school or completed a GED high school equivalency certificate.

c. The following refund checks were received and cashed by INDIVIDUAL #1, INDIVIDUAL #2, INDIVIDUAL #3, and INDIVIDUAL #4:

| Individual | Check Number | Date | Amount |
|---|---|---|---|
| # 1 | 3798523 | 12/17/08 | $495.00 |
| | 3821369 | 12/26/08 | $2,366.00 |
| # 2 | 3652859 | 10/29/08 | $495.00 |
| | 3658196 | 10/30/08 | $2,366.00 |
| # 3 | 3699285 | 11/12/08 | $495.00 |
| | 3699284 | 11/12/08 | $2,366.00 |
| # 4 | 3901913 | 1/28/09 | $495.00 |
| | 4075963 | 3/25/09 | $2,366.00 |

INDIVIDUAL #1, INDIVIDUAL #2, INDIVIDUAL #3, and INDIVIDUAL #4, all kept a portion of those proceeds and shared the remainder with **CRUMBLE** and **MCNEIL**. All of the proceeds were used for personal use and were not used for legitimate educational purposes.

d. **DANYELLE T. MCNEIL** completed initial UOP online coursework for recruited participants to keep their enrollment in good standing until the financial aid funds were received by the UOP at which point she abandoned the pretext that they were legitimate students.

19. Of the $98,658 in federal student financial aid received by **CRUMBLE**, **MCNEIL**, and the participants, the UOP received $51,880 for tuition and fees. **CRUMBLE**, **MCNEIL**, and the participants received $46,778 in refund payments. They spent the refund payments on personal expenses rather than on any legitimate educational expenses related to the UOP.

20. Between on or about September 1, 2008, and on or about September 28, 2009, within the Southern District of Illinois and elsewhere, the defendants, **CRUMBLE** and **MCNEIL**, knowingly and willfully obtained by fraud and false statements United States Department of Education federal student financial aid funds in excess of $200.

21. Between on or about September 1, 2008, and on or about September 28, 2009, within the Southern District of Illinois and elsewhere, the defendants, **CRUMBLE** and **MCNEIL**, willfully and with the intent to defraud devised the above-described scheme and artifice to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises.

22. For the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants knowingly caused to be delivered by United States mail the following mail matter: student financial aid refund disbursement checks.

23. For the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendants caused interstate wire communications to take place by submitting applications for admission to the UOP and student financial aid applications over the Internet.

All in violation of Title 18, United States Code, Section 371.

UNITED STATES OF AMERICA

STEPHEN R. WIGGINTON
United States Attorney

MATTHEW H. BROOKS
Assistant United States Attorney

RECOMMENDED BOND: $10,000 (unsecured)